IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL ZAMBRANO,

        Plaintiff,

v.                                                           No. 1:17-cv-00672- KRS

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO REVERSE AND REMAND

Plaintiff Michael Zambrano seeks review of the Commissioner's determination that he is not entitled to supplemental security income benefits (SSI). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered Mr. Zambrano's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum, filed October 23, 2017 (Doc. 17), the Commissioner's response in opposition, filed November 17, 2017 (Doc. 19), and Mr. Zambrano's reply, filed December 13, 2017 (Doc. 20), along with the remainder of the record. Having so considered, the Court **FINDS** and **CONCLUDES** that Mr. Zambrano's motion is well taken in part and not well taken in part and should be granted in part and denied in part.

## PROCEDURAL BACKGROUND

On May 30, 2013, Mr. Zambrano protectively filed an application for SSI, alleging that he had been disabled since May 30, 2013, due to anxiety, depression, PTSD, bipolar disorder and degenerative disk disease and hepatitis C. (AR 262). On October 1, 2013, the agency determined that Mr. Zambrano was not disabled and denied his claim. (AR 99-113). This

determination was affirmed on January 8, 2014 (AR 114-129), and a subsequent hearing before an administrative law judge ("ALJ"), held on January 25, 2016, again ended in a denial. (AR 53-69). The ALJ's decision became final when, on March 21, 2017, the Appeals Council denied Mr. Zambrano's request for review. (AR 6-10). *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) (explaining that if the Council denies a request for a review, the ALJ's opinion becomes the final decision); 20 C.F.R. § 404.900(a)(1)-(5).

## **STANDARD**

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). The Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (citation omitted). Even so, it is not the function of the Court to review Mr. Zambrano's claims de novo, and the Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

# **DISABILITY FRAMEWORK**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Act further adds that for the purposes of § 423(d)(1)(A):

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§ 423(d)(2)(A).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show he: (1) is not engaged in "substantial gainful activity"; (2) has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) has impairment(s) that either meet or equal one of the "Listings" of presumptively disabling impairments; or (4) is unable to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4) (i–iv) & 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show a Listings-level impairment, but proves he is unable to perform "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

Steps four and five are based on an assessment of the claimant's residual functional capacity ("RFC") which gauges "what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988); *see also* 20 C.F.R. § 404.1545(a)(1).

## **THE ALJ'S DETERMINATION**

As detailed in her written decision, the ALJ engaged in the sequential analysis set forth above, first finding that Mr. Zambrano had not engaged in substantial gainful activity since his alleged onset date of May 30, 2013. (AR 58). At step two, the ALJ identified the following severe, medically determinable impairments from which Mr. Zambrano suffers: mild scoliosis and minimal degenerative joint disease of the lumbar spine; post-traumatic stress disorder ("PTSD"); anti-social personality disorder; major depressive disorder; and a history of polysubstance abuse.[1] (*Id.*). At step three, the ALJ determined that none of Mr. Zambrano's impairments, whether alone or in combination, met or medically equaled the severity of a listed impairment. (AR 59). As a result, at step four, the ALJ assessed Mr. Zambrano's Residual Functional Capacity ("RFC"). (AR 60-63). The ALJ found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defmed (sic) in 20 CFR 416.967(b) except he can never climb ladders, ropes or scaffolds, can occasionally stoop and crouch, and must avoid more than occasional exposure to extreme cold. He is further limited to understanding, remembering, and carrying out simple instructions, and is able to maintain attention and concentration to perform simple tasks for two hours at a time without requiring redirection to task. He can have no public contact, and interactions with co- workers and supervisors should be superficial. He requires work involving no more than occasional change in routine work setting, and no more than occasional independent goal setting or planning.

(AR 60).

---

[1] The ALJ also found that there was evidence Mr. Zambrano suffered from "hepatitis C, hypertension and gastroesophageal reflux, but concluded none of those conditions has more than a minimal impact on functionality, and were non-severe. (*Id.*).

At step five, the ALJ found that Mr. Zambrano has no past relevant work and therefore considered whether Mr. Zambrano is able to do any other work within his residual functional capacity, age, education, and work experience. (*Id.*). Noting the residual functional capacity above, Mr. Zambrano's status as a "younger individual" as defined by the regulations, completion of high school and English speaking ability, and lack of past work that would put at issue transferability of skills, the ALJ determined significant number of jobs exist in the national economy that the Mr. Zambrano can perform, such as:

    1) Photocopy machine operator (DOT 207.685-014, svp 2, light, 18,000 jobs nationally),
    2) Marker (DOT 209.587-034, svp 2, light, 271,000 jobs nationally), and
    3) Housekeeping cleaner (DOT 323.687-014, svp 2, light, 130,000 jobs nationally).

(AR 64). After completing the sequential analysis, the ALJ concluded that Mr. Zambrano has not been under a disability since May 30, 2013 when Mr. Zambrano filed his application for SSI benefits. (AR 64).

## MR. ZAMBRANO'S CHALLENGES TO THE ALJ'S DETERMINATION

Mr. Zambrano bases his request for reversal and remand on contentions that the ALJ ignored 1) material objective evidence that tended to reinforce the credibility of Mr. Zambrano's pain complaints and alleged limitations; and 2) material evidence of pain treatment that tended to reinforce Mr. Zambrano's complaints of pain. (Doc. 17).

## DISCUSSION

All of the ALJ's findings must be supported by substantial evidence and she must consider all relevant evidence in making her findings. *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). The Court must "meticulously examine the record as a whole, including anything that might undercut or detract from the ALJ's findings in order to determine if the substantiality

test has been met. *Grogan*, 399 F.3d at 1262 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). The ALJ is charged with "carefully considering all relevant evidence and linking his findings to specific evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). An ALJ must set forth "specific, legitimate reasons" for disregarding a medical report. *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996). A court cannot meaningfully review an ALJ's decision in cases where the ALJ fails to identify the reasons that relevant and material medical evidence was rejected. *Clifton*, 79 F.3d at 1009-10. The ALJ must discuss the evidence that supports her decision as well as the uncontroverted evidence she chooses not to rely on as well as "significantly probative evidence he rejects." *Williams v. Apfel*, 65 F. Supp. 2d 1223, 1232-33 (N.D. Okl. 1999). The ALJ must "not ignore evidence that suggests an opposite conclusion." *Salas v. Chater*, 950 F. Supp. 316, 319 (D.N.M. 1996).

**A.  The ALJ appropriately addressed the findings contained in the August 26, 2009 x-ray.**

Mr. Zambrano argues that the ALJ failed to properly consider, let alone mention the findings from an August 26, 2009 x-ray of Mr. Zambrano's spine. Mr. Zambrano also challenges the ALJ's characterization of degenerative changes of his spine as "minor' and 'trace,' hardly supporting the disproportionate claim that his pain is always a 10." (AR 63; Doc. 17). The x-ray at issue reflects "[a]t least 75% narrowing is present at L5-S1…Impression: Spasm 75% narrowing L5-S1." (AR 539). Contrary to Mr. Zambrano's contention, the ALJ did discuss this x-ray, stating that "[i]n 2009, images taken in prison found 'minor' osteophytosis in the lumbar area and narrowing at L5-S1." (AR 61). Accordingly, Mr. Zambrano is simply incorrect in alleging that the ALJ failed to discuss the August 26, 2009 x-ray in her decision.

As for the ALJ's characterization of the degeneration of his spine as "trace" or "minor," the ALJ drew directly from the various x-rays she was discussing, which found "minor

osteophytosis in the lumbar area" in 2009 (AR 539), "mild scoliosis and minimal degenerative change" in 2013 (AR 453), described the cervical spine as "unremarkable" in 2014 (AR 669) and the lumbar spine as having "mild degenerative changes" in 2014. (AR 671). Thus, the ALJ adequately addressed findings contained in the August 26, 2009 x-ray in her decision and her characterization of the degeneration of Mr. Zambrano's spine as "trace" or "minor" comes directly from and therefore is supported by substantial evidence in the record. Mr. Zambrano's arguments to the contrary lack merit, and the Court denies his motion to reverse or remand in this regard.

      **B.**     **The ALJ failed to discuss significant probative evidence that suggested the Plaintiff's spinal condition was disabling and to explain why she was rejecting or choosing not to rely on that evidence.**

Mr. Zambrano argues that the ALJ failed to properly consider important findings contained in an MRI taken March 6, 2015,[2] and did not address the fact that Mr. Zambrano had been prescribed a TENS unit for chronic pain on October 22, 2014. Although the ALJ mentioned the MRI in her decision, she merely stated that the "MRI of the thoracic spine was normal while the (MRI of the) cervical (spine) indicated some attenuation at C6-C7 but no foraminal stenosis." (AR 61). The ALJ's decision does not mention the TENS unit.

In addition to the notations of "some attenuation at C6-7 but no foraminal stenosis" highlighted by the ALJ, the MRI report documents spinal stenosis at C2-C3,[3] C4-C5, C6-C7, and C7-T1, mild circumferential annular bulges at C3-C4 and C5-C6, a moderate circumferential annular bulge at C6-C7, and effacement of the ventral CSF space at C5-C6 and C6-C7. (AR

---

[2] In his Motion to Reverse and/or Remand (Doc. 17), Mr. Zambrano indicates that the MRI was dated March 7, 2015. The MRI indicates that it was taken on March 6, 2015, and the report was dictated by T. Jenks Currie, M.D. on March 7, 2015. (AR 705).

[3] In his Motion to Reverse and/or Remand (Doc. 17), Mr. Zambrano states that the MRI included a finding of a "mild circumferential **annual tear**" at C3-C4 and a "moderate circumferential **annual** bulge" at C6-C7. (Doc. 17 (emphasis added)). In actuality, the MRI finds that Mr. Zambrano suffers from a "mild circumferential **annular** bulge" at C3-C4 and a "moderate circumferential **annular** bulge" at C6-C7. (AR 705 (emphasis added)).

705). The MRI report concludes that Mr. Zambrano suffers from "degenerative disc disease at C6-7 resulting in early central canal stenosis." (*Id.*). The ALJ did not discuss the probative findings of spinal degeneration contained in Mr. Zambrano's MRI, other than mentioning "some attenuation at C6-7" and "[n]o evidence of foraminal stenosis," or the conclusion that Mr. Zambrano suffers from degenerative disc disease at C6-C7 resulting in early central canal stenosis. The ALJ does not mention that the MRI showed multiple levels of spinal stenosis in addition to that at C6-C7, and her decision completely ignores the multiple annular bulges and the effacement of the ventral CSF spaces at C5-C6 and C6-C7 disclosed by the MRI. (AR 61). Lastly, the ALJ fails to mention or consider the fact that Mr. Zambrano was prescribed a TENS Unit on October 22, 2014 by his doctor for chronic back pain. (AR 600).

ALJs have a duty to carefully consider all the relevant evidence and make a written record of their reasons for accepting or rejecting the evidence. *Clifton*, 79 F.3d at 1009-10. While the ALJ's decision adequately addresses the findings contained in the lumbar spine x-ray dated August 26, 2009, the same cannot be said of her treatment of the MRI taken March 6, 2015. In her decision, the ALJ only discussed the portions of the MRI report that support her belief that the Mr. Zambrano was exaggerating his pain. The ALJ ignored findings in the MRI that support Mr. Zambrano's claim of disability and are contrary to her decision. (AR 61). Furthermore, the ALJ failed to discuss that Mr. Zambrano was prescribed a TENS Unit by his doctor on October 22, 2014, which is another example of the ALJ ignoring evidence that is adverse to her view that Mr. Zambrano's back and neck pain complaints are disproportionate to the medical evidence.

The failure by the ALJ to appropriately address relevant evidence requires that the ALJ's decision be reversed, and that the matter be remanded for further proceedings. Of course, it is

possible that, after consideration of all of the relevant evidence, the ALJ may reach the same decision as was reached in the ALJ's previous decision. However, it is incumbent upon the ALJ to fairly consider all of the relevant evidence in the record, and to discuss the uncontroverted evidence she chooses not to rely on as well as significantly probative evidence she rejects. The ALJ may not simply ignore relevant evidence that suggests an opposite conclusion.

## **CONCLUSION**

The Court finds that the ALJ failed to properly consider probative evidence bearing on Mr. Zambrano's claim of disability, including his claims of pain. Accordingly, Mr. Zambrano's Motion to Reverse and Remand to Agency for Rehearing should be granted in part. Mr. Zambrano also alleged that other errors not addressed by the Court were committed by the ALJ. The Court will not address those other alleged errors at this time "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing (Doc. 17) is hereby granted.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE